# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

EMI BLACKWOOD MUSIC INC., et al.          Case No. 1:13-cv-00749-LLS

          Plaintiffs,

                                  Judge Stanton

vs.

KTS KARAOKE, INC., et al.

          Defendants.


**[CORRECTED RE-FILING REPLY DUE TO EVENT TYPE ERROR AND TABLES] DEFENDANTS DEFENDANTS KTS KARAOKE, INC. AND TIMMY SUN TON'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER OR STAY THE COMPLAINT**

## TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1

II.    **ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2

        A.    **This Action Should Be Dismissed as to KTS and Ton Because the Court Lacks Personal Jurisdiction over KTS or Ton** . . . . . . . . Page 2

        B.    **The Ruling by the California Court Was an Interim Order and Did Not Have Res Judicata or Collateral Estoppel Effect** . . . . . Page 6

        C.    **The "First to File" Rule Should Not Apply** . . . . . . . . . . . . . . . . . Page 8

                1.    **The Fact that EMI is Jointly Managed as Part of One Homogenous Company with other Parties Already Involved in Litigation in the Central District of California with Defendants Constitute Special Circumstances Nullifying Plaintiffs' Reliance on the "First to File" Rule** . . . . . . . . . . . . . . . . . . . . . . . Page 9

                2.    **The Advertising and Sale of the Same Karaoke Machine Already in Issue in the Sony/ATV California Action is Also the Basis for Almost Two Thirds of the Works At Issue in the Action** . . . . . . . . . . . . . . . . . . . . . . . . . Page 9

                3.    **EMI's Activities are Being Controlled and Managed/Administered By Sony/ATV** . . . . . . . Page 10

                4.    **The "First to File" Rule is Inapplicable in this Case Because Sony/ATV and EMI Are Being Operated as "One Homogenous Company"** . . . . . . . . . . . . . Page 10

        D.    **The Claims in KTS's Complaint Are Not Baseless or Without Merit and Have Already Withstood a Motion to Dismiss under Rule 12(b)(6) in the Sony/ATV Action** . . . . . . . . . . . . . . . . . . . . . . . . . . Page 12

                1.    **KTS May Raise Copyright Misuse As An Affirmative Claim** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 12

                2.    **Plaintiffs are Entitled to a Single Award of Statutory Damages for Each Copyright Infringed and May Not**

**Seek a Separate Award of Statutory Damages from Every Purchaser in the Chain of Title** . . . . . . . . Page 14

**3.**  **Plaintiffs' Unfair Business Practices/Unfair Competition Claim is Not Frivolous and is Not Preempted by the Copyright Act Because Plaintiffs Are Not Asserting A Copyright Ownership Interest**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 18

**4.**  **The Very Same Arguments Raised by Plaintiffs Here Was Previously Raised by Sony/ATV and Were Soundly Rejected** . . . . . . . . . . . . . . . . . . . . . . . . Page 19

**E.**  **Alternatively, This Case Should be Transferred to The Central District of California Pursuant to 28 U.S.C. § 1404(a)** . . . . . . . Page 19

**1.**  **Plaintiffs' "Principal" Offices are Not their Only Offices** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 20

**2.**  **There is No Indication that Plaintiffs Do Not Have Available Witnesses in Its California Offices** . . Page 20

**3.**  **Plaintiffs' Attempts to Manufacture a "Greater" Connection to New York By Purposefully Conducting its Alleged Investigation Into the California Based Defendants' Activities From its New York Offices Rather Than Their "Local" Offices Should Be Rejected**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 22

**4.**  **Plaintiffs Conceded the Remaining Factors Favor Transfer by Failing to Address the Other Factors**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 24

**III.**  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 25

ii

**TABLE OF AUTHORITIES**

<u>CASES</u>                                                                                                    <u>PAGE</u>

*Abrahams v. Young & Rubicam Inc.,*
    79 F.3d 234, n. 2 (2d Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 25

*Adobe Sys. Inc. v. Trinity Software Distribution, Inc.,*
    C 12-1614 SI, 2012 WL 3763643 (N.D. Cal. Aug. 29, 2012) . . . . . . . . . . . . . . Page 23

*Adobe Systems Incorp. v. Kornrumpf,*
    No. C 10–02769, 780 F.Supp.2d 988, 2011 WL 181375 (N.D. Cal. Jan. 19, 2011)
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

*Adobe Systems Incorp. v. Norwood,*
    No. C 10–03564, 2011 WL 845923 (N.D. Cal. Mar. 8, 2011) . . . . . . . . . . . . . . Page 13

*Altera Corp. v. Clear Logic, Inc.,*
    424 F.3d 1079 (9th Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,*
    790 F. Supp. 2d 1024 (N.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

*Americana Fabrics, Inc. v. L & L Textiles, Inc.,*
    754 F.2d 1524, n.3 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6

*Apple Inc. v. PsyStar Corp.,*
    No. C 08–03251, 2009 WL 303046 (N.D. Cal. Feb. 6, 2009) . . . . . . . . . . . . . . . Page 13

*Apple, Inc. v. Psystar Corp.,*
    No. C 08–03251, 2009 WL 303046 (N.D. Cal. Feb. 6, 2009) . . . . . . . . . . . . . . . Page 13

*Aquascutum of London, Inc. v. S.S. American Champion,*
    426 F.2d 205 (2d Cir.1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

*Arista Records LLC v. Lime Group LLC,*
    784 F. Supp. 2d 313 (S.D. N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 17

*Bannon v. Bannon,*
    270 N.Y. 484, 1 N.E.2d 975 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*Beacon Enterprises, Inc. v. Menzies,*
    715 F.2d 757 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

*Bernardo v. Planned Parenthood Federation of America*,
     115 Cal.App.4th 322, Cal.Rptr.3d 197 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 19

*Bonilla v. Smithfield Assocs. LLC*,
     No. 09 Civ. 1549(DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec.4, 2009) . . . . . Page 25

*Bossey ex rel. Bossey v. Camelback Ski Corp.*,
     21 Misc. 3d 1116(A), 873 N.Y.S.2d 509 (Sup. Ct. 2008) . . . . . . . . . . . . . . . . . . . Page 3

*Bouchat v. Champion Products, Inc.*,
     327 F.Supp.2d 537 (D.Md.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 16

*Broad v. DKP Corp.*,
     No. 97 Civ. 2029(LAP), 1998 WL 516113, at *3 (S.D.N.Y. Aug. 19, 1998) . . . Page 25

*Bryant v. Finnish National Airline*,
     15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965) . . . . . . . . . . . . . . . . . Page 4

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
     517 F.3d 1271 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14, 15

*Burger King Corp. v. Rudzewicz*,
     471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) . . . . . . . . . . . . . . . . . . . . Page 5

*Centocor, Inc. v. Medimmune, Inc.*,
     2002 WL 31465299 *3 (N.D.Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 12

*Citigroup Inc. v. City Holding Co.*,
     97 F.Supp.2d 549, n. 4 (S.D.N.Y.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*Cf. Herbert Ltd. P'ship v. Elec. Arts Inc.*,
     325 F. Supp. 2d 282  (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 21

*Commercial Union Ins. Co. v. Ford Motor Co.*,
     640 F.2d 210, (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14

*Craigslist, Inc. v. Doe 1*,
     C09-4739 SI BZ, 2011 WL 1897423 (N.D. Cal. Apr. 25, 2011) . . . . . . . . . . . . Page 17

*Craigslist, Inc. v. Meyer*,
     C 09-4739 SI, 2011 WL 1884555 (N.D. Cal. May 18, 2011) . . . . . . . . . . . . . . . Page 17

*Data Sys. Corp. v. Computer Assoc. Int'l, Inc.*,
     802 F.Supp. 1463 (N.D. Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

iii

*Daventree Ltd. v. Republic of Azerbaijan*,
    349 F. Supp. 2d 736 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3

*Donaldson, Lufkin & Jenrette*,
    542 F.Supp. at 1321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*Elbex Video Kabushiki Kaisha v. Taiwan Regular Elec. Co.*,
    93 Civ. 6160(KMW), 1995 WL 224774, at *2-3 (S.D. N.Y. Apr. 14, 1995) . . . Page5, 23

*Elec. Data Sys. Corp. v. Computer Assoc. Int'l, Inc.*,
    802 F.Supp. 1463 (N.D. Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

*Felske v. Hirschmann*,
    10 CIV. 8899 RMB, 2012 WL 716632 at *3 (S.D.N.Y. Mar. 1, 2012) . . . . . . . . Page 25

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
    443 F.2d 1159 (2d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14

*Hanig v. Yorktown Cent. Sch. Dist.*,
    384 F.Supp.2d 710 (S.D.N.Y.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 25

*Herbert Ltd. P'ship v. Elec. Arts Inc.*,
    325 F. Supp. 2d 282 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 21

*Holt v. Schweiger Const. Co.*,
    07-0857-CV-W-REL, 2009 WL 1259966 (W.D. Mo. May 5, 2009) . . . . . . . . . Page 18

*In re PCH Associates*,
    949 F.2d 585 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*Interwood Marketing Ltd. v. Media Arts Int'l Ltd.*,
    1990 WL 209432, at *2–*3 (S.D.N.Y. Dec. 12, 1990) . . . . . . . . . . . . . . . . . . . . . . Page 8

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*,
    119 F. Supp. 2d 433 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8

*Invivo Research, Inc. v. Magnetic Resonance Equipment Corp.*,
    119 F.Supp.2d 433 (S.D.N.Y.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*ISI Brands, Inc. v. KCC Int'l, Inc.*,
    458 F.Supp.2d 81 (E.D. N.Y.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 23

*Jimenez v. Shippy Realty Corp.*,
    213 A.D.2d 377, 622 N.Y.S.2d 983 (2d Dep't 1995) . . . . . . . . . . . . . . . . . . . . . . . Page 6

iii

*Kramer v. Vogl,*
  17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966) . . . . . . . . . . . . . . . . . . Page 4

*Krepps v. Reiner,*
  588 F. Supp. 2d 471 (S.D. N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5,23

*Laufer v. Ostrow,*
  55 N.Y.2d at 310, N.Y.S.2d at 459, N.E.2d at 694 . . . . . . . . . . . . . . . . . . . . . . Page 4

*Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc.,*
  495 F.Supp. 253 (S.D.N.Y.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

*Mattel, Inc. v. Anderson,*
  No. 04-CV-5275, 2005 WL 1690528, at *2 (S.D. N.Y. July 18, 2005) . . . . . . . . Page 23

*Mattel, Inc. v. Anderson,*
  No. 04-CV-5275, 2005 WL 1690528, at *2 (S.D. N.Y. July 18, 2005) . . . . . . . . . Page 5

*Matter of McGrath v. Gold,*
  36 N.Y.2d 406, 369 N.Y.S.2d 62 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*McClatchey v. Associated Press,*
  83 U.S.P.Q.2d 1095, 35 Media L. Rep. 7885, 2007 WL 1630261 (W.D. Pa. June 4, 2007)
  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 16

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.,*
  269 F.Supp.2d 1213 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

*Midwest Tape v. Recorded Books,*
  No. 3:09 CV 2176, 2010 WL 1258101 at *1 (N.D. Ohio Mar. 26, 2010) . . . . . . Page 13

*Millennium Enters., Inc. v. Millennium Music, LP,*
  33 F. Supp. 2d 907(D. Or.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 23

*MSK Ins., Ltd. v. Employers Reinsurance Corp.,*
  212 F. Supp. 2d 266, 2002 WL 1766453 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . Page 8

*Nat'l Patent Development Corp. v. American Hospital Supply Corp.,*
  616 F.Supp. 114, n. 7 (S.D.N.Y.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8

*NBA Properties, Inc. v. Salvino, Inc.,* No.
  99 Civ. 11799, 2000 WL 323257, at *7 (S.D.N.Y. March 27, 2000) . . . . . . . . . . Page 21

*NuboNau, Inc. v. NB Labs, Ltd.*,
　　2012 WL 843503, *3 (S.D. Cal. Mar.9, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 23

*Ontel Prods., Inc. v. Project Strategies Corp.*,
　　899 F.Supp. 1144, n. 9 (S.D.N.Y.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*Open Source Yoga Unity v. Choudhury*,
　　2005 WL 756558, *8 (N.D.Cal.2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

*Orthmann v. Apple River Campground, Inc.*,
　　765 F.2d 119 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8

*Ott v. Barash*,
　　109 A.D.2d 254, 491 N.Y.S.2d 661 (2d Dep't 1985) . . . . . . . . . . . . . . . . . . . . . . . Page 6

*People v. Casa Blanca Convalescent Homes, Inc.*,
　　159 Cal.App.3d 509, 206 Cal.Rptr. 164 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 19

*People v. Sanders*,
　　71 N.Y.S.2d 946, 528 N.Y.S.2d 819 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*Reliance Ins. Co. v. Six Star, Inc.*,
　　155 F.Supp.2d 49, n. 2 (S.D.N.Y.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*Ring Sales Co. v. Wakefield Engineering, Inc.*,
　　90 A.D.2d 496, 454 N.Y.S.2d 745 (2d Dep't 1982) . . . . . . . . . . . . . . . . . . . . . . . Page 4

*Rosenblatt v. City of N.Y.*,
　　No. 05 Civ, 5521, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) . . . . . . . . Page 25

*Schumacher v. Rosenthal*,
　　226 F.2d 946 (7th Cir. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14

*Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*,
　　453 F.2d 552 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14

*Selman v. Harvard Medical School*,
　　494 F.Supp. 603, & n. 4 (S.D.N.Y.), 636 F.2d 1204 (2d Cir.1980) . . . . . . . . . . . . Page 4

*SoftMan Products Co., LLC v. Adobe Sys., Inc.*,
　　171 F. Supp. 2d 1075 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 17

*Stark Carpet Corp. v. M-Geough Robinson, Inc.*,
　　481 F.Supp. 499 (S.D.N.Y.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

iii

*Stewart v. Vista Point Verlag,*
No. 99 Civ. 4425(LAP), 2000 WL 1459839, at *4 (S.D. N.Y. Sept.29, 2000)  . . Page 23

*Ticketmaster v. RMG Tech., Inc.,*
536 F.Supp.2d 1191 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

*TMTV, Corp. v. Mass Productions, Inc.,*
2009 WL 890456 *1 (D.P.R. Mar. 27, 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 16

*United States Media Corp. v. Edde Entm't Corp.,*
No. 94 Civ. 4849, 1998 WL 401532, at *20 (July 17, 1998 S.D.N.Y.) . . . . . . . . Page 17

*United States v. Gen. Motors Corp*.,
183 F. Supp. 858 (S.D.N.Y. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 20

*Warner Bros., Inc. v. Dae Rim Trading, Inc.,*
677 F. Supp. 740 (S.D. N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14

*Zangiacomi v. Hood,*
193 A.D.2d 188, 603 N.Y.S.2d 31 (1st Dep't 1993) . . . . . . . . . . . . . . . . . . . . . . Page 7

## ***MISC***

1 A.L.R. Fed. 15 § 5(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 20

1 Civil Practice in the Southern District of New York § 10:21 (2d ed.) . . . . . . . . . . . . . Page 21

15 Fed. Prac. & Proc. Juris. § 3851 (3d ed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 21

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2,19

Black's Law Dictionary 352-53 (8th ed.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 15

Business and Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 19

California Pursuant to 28 U.S.C. § 1404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 9

California Pursuant to 28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 19

CPLR 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3

*Nw. Airlines,* 451 U.S. at 88, 101 S.Ct. 1571 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 15

*Practice Management,* 121 F.3d at 518 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

Prosser, Handbook of the Law of Torts 272-73 (3d ed. 1964) . . . . . . . . . . . . . . . . . . . . . Page 14

Restatement of Torts § 885(3) (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14

Rule § 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 12

Rule § 302(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

Wright, Miller, et al., 15 Fed. Prac. & Proc. Juris. § 3851 (3d ed.) . . . . . . . . . . . . . . . . . Page 21

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs admit that there is overlapping ownership with Sony/ATV and that they are being "administered" by Sony/ATV.  In fact, Martin Bandier, the CEO of both EMI and Sony/ATV music publishing operations has not only admitted but in fact boasted that the two operations would be run as "*one homogeneous company with one person - myself - running it.*"[1]  As such, what Sony/ATV is effectively advocating is that while it is involved in active litigation with the KTS Defendants in Los Angeles, rather than bringing all claims by its other controlled entities in that same venue that it instead be allowed to sue KTS regarding the very same activities already at issue in Los Angeles, in a separate and distant venue using other companies that are also part of the same "homogeneous company."  This appears to be part of a pattern and practice of the Sony/ATV controlled entities like the EMI Parties to sue in distant fora to burden defendants and gain advantage.[2]  Such a legal shell game should be rejected and all related claims by these related and jointly managed entities should be litigated in the same forum.

Moreover, the facts do not support personal jurisdiction over Defendants.  Plaintiffs cannot manufacture jurisdiction by having their private investigator purchase product over the internet.  That does not constitute "purposeful availment," and must be rejected.

Most significantly, Plaintiffs have conceded that the majority of factors to be considered in determining whether to transfer venue under 28 U.S.C. § 1404(a) favor transfer, by failing

---

[1] See Reply Declaration of M. Danton Richardson ("Richardson Reply Decl."), Exhibit A.

[2] See Richardson Reply Decl., Exhibit B.  Forcing Florida defendant to litigate in California.

Page 1

even to address the majority of the factors involved.  The two factors Plaintiffs do address do not weigh in Plaintiffs' favor.

This action should be dismissed or, in the alternative, transferred to the Central District of California.

## II.   ARGUMENT

### A.   This Action Should Be Dismissed as to KTS and Ton Because the Court Lacks Personal Jurisdiction over KTS or Ton

EMI claims there is both general and specific personal jurisdiction over KTS but the evidence it identifies falls way short of hitting the mark for either.   "Existence of general jurisdiction requires a defendant to have 'continuous and systematic general business contacts' and demands the application of 'a more stringent minimum contacts test than that applicable to specific jurisdiction.' See *Aerogroup Int'l, Inc*., 956 F.Supp. at 439 (quoting Metropolitan Life Ins. Co., 84 F.3d at 568)."  *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) opinion clarified on denial of reconsideration, 02 CIV. 6356 (SHS), 2005 WL 2585227 (S.D.N.Y. Oct. 13, 2005).

> General jurisdiction over a foreign corporation under CPLR 301 does not lie in cases wherein the claim of jurisdiction rests on allegations of solicitation and marketing by a non-New York agent through a web-based reservation program that is not located in New York. Rather, what is necessary to a finding of jurisdiction under CPLR 301 in a tort case, which does not fall under the auspices of New York's long-arm statute codified at CPLR 302, is: 1) the presence of traditional indicia of doing business; or 2) substantial and continuous solicitation by the foreign corporate defendant coupled with financial, commercial dealings or other activities of substance in New York.

> Here, the plaintiffs failed to carry their burden of

Page 2

> establishing facts necessary to support a finding that the defendant
> may be deemed to have a presence under the "doing business" rule
> of CPLR 301. The record adduced on this motion reveals only that
> the defendant solicits business through its interactive website
> which allows customers, including those in New York, to book
> reservations for accommodations and to purchase tickets to ski lifts
> and other recreational events at the defendant's ski resort in
> Pennsylvania. Even if this court were to conclude that the constant
> availability of the defendant's interactive web-site constitutes
> substantial solicitation so as to trigger application of the
> "solicitation-plus" rule, there has been no showing of other factors
> such as, its engagement in financial or commercial dealings or
> other activities of substance here in New York.

*Bossey ex rel. Bossey v. Camelback Ski Corp.*, 21 Misc. 3d 1116(A), 873 N.Y.S.2d 509 (Sup. Ct.

2008) (citations omitted).

The EMI Parties cannot controvert the KTS Parties' showing that they have no place of

business, employees or agents in New York.  They have not shown any continuous or systematic

attempts to avail the benefits of doing business in New York.  There can be no general

jurisdiction in such circumstances.

Nor do the EMI Parties establish a basis for specific jurisdiction.  Merely purchasing

products from a New York supplier or selling to a New York based customer from outside New

York does not, in and of itself, establish jurisdiction:

> The only contacts by Menzies with New York set forth in the
> record are (1) her "cease and desist" letter to Beacon, and (2) an
> unspecified number of mail order sales of her products in New
> York. These contacts are insufficient to satisfy section 301's
> "doing business" test. The shipment of goods into New York does
> not *ipso facto* constitute "doing business." See *Loria & Weinhaus,*
> *Inc. v. H.R. Kaminsky & Sons, Inc.*, 495 F.Supp. 253, 257
> (S.D.N.Y.1980); *Selman v. Harvard Medical School,* 494 F.Supp.
> 603, 611 & n. 4 (S.D.N.Y.), aff'd mem., 636 F.2d 1204 (2d
> Cir.1980); *cf. Kramer v. Vogl*, 17 N.Y.2d 27, 30-32, 267 N.Y.S.2d
> 900, 902-04, 215 N.E.2d 159, 161-62 (1966) (mere shipment of
> goods into New York insufficient to meet lesser standard of

Page 3

"transacting business" under section 302(a)(1)).

> Even if we are to assume that Menzies solicited those New York mail order sales by advertisements reaching New York, section 301's jurisdictional requirements remained unsatisfied. Although "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business,' " *Aquascutum of London, Inc. v. S.S. American Champion,* 426 F.2d 205, 211 (2d Cir.1970); *see Laufer v. Ostrow,* 55 N.Y.2d at 310, 449 N.Y.S.2d at 459, 434 N.E.2d at 694-95, Beacon has not come close to demonstrating "substantial solicitation" by Menzies. To sustain personal jurisdiction, New York courts "require 'substantial solicitation' that is carried on with a 'considerable measure of continuity and from a permanent locale' within the state." *Stark Carpet Corp. v. M-Geough Robinson, Inc.,* 481 F.Supp. 499, 505 (S.D.N.Y.1980) (quoting *Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 429, 431, 260 N.Y.S.2d 625, 627-28, 208 N.E.2d 439, 441 (1965)); *see Ring Sales Co. v. Wakefield Engineering, Inc.,* 90 A.D.2d 496, 497, 454 N.Y.S.2d 745, 746 (2d Dep't 1982).

*Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762-63 (2d Cir. 1983).  Plaintiffs have failed to establish sufficient fact to support general jurisdiction.

Specific jurisdiction is available only if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" ***those*** activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).  The mere fact that a defendant has some contact with the forum and plaintiff alleges a claim arising out of that contact, is not alone sufficient to satisfy due process.

Plaintiffs have only a purchase from their investigator and a reference to a customer comment on Defendants' website regarding a sale which did not involve any of Plaintiffs' copyrights.  These facts are insufficient for the exercise of jurisdiction.

As discussed in Defendants motion, "plaintiffs are not permitted to 'manufacture'

Page 4

personal jurisdiction over defendants by orchestrating an in-state web-based purchase of their

goods." *Krepps v. Reiner,* 588 F. Supp. 2d 471, 479 (S.D. N.Y. 2008) aff'd, 377 F. App'x 65,

2010 (2d Cir. 2010); *Mattel, Inc. v. Anderson,* No. 04-CV-5275, 2005 WL 1690528, at *2 (S.D.

N.Y. July 18, 2005) (" 'Defendant[ ] cannot be said to have 'purposefully' availed [herself] of the

protections of this forum when it was an act of someone associated with plaintiff, rather than

[her] web site advertising, that brought [her] products into this forum.' ") (quoting *Millennium*

*Enters., Inc. v. Millennium Music, LP,* 33 F. Supp. 2d 907, 911 (D. Or.1999)); *Stewart v. Vista*

*Point Verlag,* No. 99 Civ. 4425(LAP), 2000 WL 1459839, at *4 (S.D. N.Y. Sept.29, 2000)

(holding that plaintiff's order of allegedly infringing product did not confer jurisdiction because

this contact was initiated by plaintiff, not defendant); *Elbex Video Kabushiki Kaisha v. Taiwan*

*Regular Elec. Co.,* 93 Civ. 6160(KMW), 1995 WL 224774, at *2-3 (S.D. N.Y. Apr. 14, 1995)

(holding that exercise of jurisdiction based on single sale arranged by plaintiff "would offend

traditional notions of 'fair play and substantial justice.' ").

The underlying theory of these cases is that it was plaintiffs' improperly manipulative acts

which were solely being relied upon to create jurisdiction, and not anything that defendants did to

avail itself of the forum's jurisdiction.  That is precisely the case here, and there is no personal

jurisdiction over KTS in New York.  Plaintiffs have failed to address or distinguish the cases

cited by Defendants.


**B.    The Ruling by the California Court Was an Interim Order and Did Not Have Res Judicata or Collateral Estoppel Effect**

Plaintiffs argue that Defendants are precluded by *res judicata* or collateral estoppel from

arguing against the application of the first to file rule based on Plaintiffs' having engaged in bad

faith and forum shopping.  That is not the case.  First, the Order by the Judge Carney granting

Plaintiffs' motion to stay the California Action is an interim order which does not have collateral

estoppel or *res judicata* effect.  *Americana Fabrics, Inc. v. L & L Textiles, Inc.,* 754 F.2d 1524,

1530 n.3 (9th Cir. 1985) (interim order had no res judicata effect).

Under the law of the State of New York, a prerequisite to the invocation of both *res*

*judicata* and collateral estoppel is the existence of a final judgment, i.e. "a final judicial

determination which necessarily decided the very cause of action or issue that a party now seeks

to litigate in a subsequent action or proceeding [citations omitted]." *Ott v. Barash*, 109 A.D.2d

254, 262-263, 491 N.Y.S.2d 661, 668 (2d Dep't 1985); *Jimenez v. Shippy Realty Corp.,* 213

A.D.2d 377, 622 N.Y.S.2d 983, 984 (2d Dep't 1995) ("[r]es judicata, which forbids relitigation

of the same claim, applies only when a final judgment is rendered on the merits") (emphasis

added); *Bannon v. Bannon*, 270 N.Y. 484, 490, 1 N.E.2d 975, 978 (1936) ("Discontinuance or

abatement of the action before final judgment leaves the issues open to contest in other litigation,

even though they had been decided provisionally by order entered upon motion made in the

action or by interlocutory judgment"); *People v. Sanders,* 71 N.Y.2d 946, 947, 528 N.Y.S.2d

819, 820 (1988) ( "Application of the doctrine of collateral estoppel requires, among other things,

that there has been a prior proceeding resulting in a valid and final judgment"); *Zangiacomi v.*

*Hood,* 193 A.D.2d 188, 195, 603 N.Y.S.2d 31, 35 (1st Dep't 1993) ("for collateral estoppel to

apply, there must be a 'valid and final judgment.'" citing *Matter of McGrath v. Gold*, 36 N.Y.2d

406, 411, 369 N.Y.S.2d 62, 65 (1975); *In re PCH Associates*, 949 F.2d 585, 593 (2d Cir. 1991)

("Both res judicata and collateral estoppel contemplate the existence of a final judgment by the

highest court to have considered the case").

The ruling by the California Court was an interim order which merely gave deference to this Court based on the first to file rule to consider the jurisdictional and venue issues.  The California case was not dismissed, but stayed pending this Court's ruling on Defendants' Motion to Dismiss.  *Res judicata* and collateral estoppel do not apply.

More importantly, that order explicitly stated that the purpose of the stay was to permit this Court to decide the question of its jurisdiction over the KTS Parties.  "The court before which the first-filed [n.3] action was brought determines which forum will hear the case." 4 *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 54 n. 2 (S.D.N.Y.2001); *Invivo Research, Inc. v. Magnetic Resonance Equipment Corp.*, 119 F.Supp.2d 433, 440 (S.D.N.Y.2000); *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 557 n. 4 (S.D.N.Y.2000); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1150 n. 9 (S.D.N.Y.1995); *Donaldson, Lufkin & Jenrette*, 542 F.Supp. at 1321.

### C.     The "First to File" Rule Should Not Apply

The EMI Parties rely heavily on their earlier filing of this action to claim that this case, and not the California case should proceed. The first filed action is the one that first obtains jurisdiction over the Defendants in a forum where they are amenable to jurisdiction.  *Nat'l Patent Development Corp. v. American Hospital Supply Corp.*, 616 F.Supp. 114, 118 n. 7 (S.D.N.Y.1984) (noting that "[t]here is some support for [plaintiff's] position that jurisdiction over the person rather than the filing of the complaint is controlling for purposes of determining priority," but deciding priority based on concerns of fairness); *MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F. Supp. 2d 266, 267-68, 2002 WL 1766453 (S.D.N.Y. 2002) (citing,

*Interwood Marketing Ltd. v. Media Arts Int'l Ltd.*, 1990 WL 209432, at *2–*3 (S.D.N.Y. Dec. 12, 1990) "By "first-filed," we mean the action whose complaint was filed first with the **relevant** court." Emphasis added)

Here, there is no question that the KTS Parties obtained jurisdiction over the EMI Parties in California.  The EMI Parties did not file their action in a jurisdiction where the KTS Parties are subject to general or specific jurisdiction or where venue is proper. Consequently, this action does not qualify as "First Filed."  Where a jurisdictional challenge is made in the allegedly first-filed suit, but not in the second-filed suit, the first-filed suit should be dismissed.  *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985).  Additionally, where the action first filed lacks proper venue, a later-filed action having proper venue proceeds despite the first-to-file rule.  *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 440 (S.D.N.Y. 2000) ("[T]he first-filed doctrine does not supersede the inquiry into the balance of convenience required under § 1404.")

    **1.**    **The Fact that EMI is Jointly Managed as Part of One Homogenous Company with other Parties Already Involved in Litigation in the Central District of California with Defendants Constitute Special Circumstances Nullifying Plaintiffs' Reliance on the "First to File" Rule**

The EMI Parties claim they were the "first to file" and that they were "entitled to file in their forum of choice."  While plaintiffs do ordinarily have the right to choose the forum, that right is not absolute.  In this action, there are "special circumstances" which trump any such right, not the least of which is the fact there was (1) litigation already pending between the EMI Parties' sister (and jointly managed) companies (the Sony/ATV Parties) and the KTS Parties and

(2) that such litigation concerns some of the same works in issue.

### 2.    The Advertising and Sale of the Same Karaoke Machine Already in Issue in the Sony/ATV California Action is Also the Basis for Almost Two Thirds of the Works At Issue in the Action

Of the **633 works** alleged to be infringed in this action, ***almost two thirds (or 406)*** of the allegedly infringing works are attributable to a "Super Capacity" karaoke machine the advertising and sale of which is already at issue in the Sony/ATV California Action.[3]  As a result, given that almost two thirds of the works in issue in this action indisputedly concern the alleged advertising and sale of the same "Super Capacity" karaoke machine already in issue in Los Angeles, EMI's claim that the "Sony/ATV case involves different issues" is totally false.[4]

### 3.    EMI's Activities are Being Controlled and Managed/Administered By Sony/ATV

EMI also claims that "Sony/ATV is *not* the parent corporation or controlling entity of the EMI Plaintiffs, and itself has no ownership interest in them whatsoever."  EMI Opposition at page 22.  While this may be technically true in the corporate and ownership since, the statement is totally false (and purposefully misleading) because Sony/ATV is not in "control" of the EMI Plaintiffs.  In fact, we need look no further than the declaration of Michael Abitbol submitted in support of EMI's Opposition to see that Sony/ATV and the various EMI entities are being run as one.  Therein Mr. Abitbol admits he is the "***Vice President, Business & Legal Affairs, for***

---

[3]Compare  Exhibit 1 to the Complaint in this action with Exhibit 8 to the Complaint filed by Sony/ATV against KTS (Exhibits 1 and 2 to the Declaration of Timmy Sun Ton ("Ton Decl.").

[4]EMI Opposition at pages 22-23.

*Sony/ATV Music Publishing LLC* and am *one of the attorneys*[5] *responsible for legal oversight for the EMI Music Publishing group of music publishing companies*."  Abitbol Dec., at page 1 (emphasis added).

The fact that a VP of Business and Legal Affairs for Sony/ATV is "one of the attorneys responsible for legal oversight for the EMI Music Publishing group of music publishing companies" evidences that Sony/ATV is, in fact, in control of and managing EMI.


      **4.**       **The "First to File" Rule is Inapplicable in this Case Because Sony/ATV and EMI Are Being Operated as "One Homogenous Company"**

Mr. Abitbol takes issue with the KTS Parties' argument that Sony/ATV is the "owner" of EMI.  However, he goes on to point out that Sony/ATV "administers [manages] the [EMI] catalogue on behalf of an investor group made up of the following entities: Sony Corporation, Mubadula Development Co. PJSC, Jnywel Capital Ltd., and the Michael Jackson Estate." Abitbol Decl., at ¶7.  Notably, Sony Corp. and the Michael Jackson Estate are the owners of Sony/ATV.  *Id.*

While Sony/ATV may not technically be the "parent" of the EMI entities, there simply can be no denying that Sony/ATV and EMI have overlapping ownership and, most importantly, are operated as one single entity:

> Sony's deal will also reunite Martin N. Bandier, the chairman of Sony/ATV, with the EMI publishing catalog, which he built over 17 years until he left the company for Sony in 2007. While Sony/ATV and EMI will be separate entities, Mr. Bandier

---

[5]Notably, Mr. Abitbol does not claim to be the ONLY attorney responsible for this litigation nor that another attorney in California could not handle the matter equally as well.

made it clear in an interview ***that he intended to run them as one collection of songs***.

"At end of the day ***we are going to be one homogeneous company with one person - myself - running it***," Mr. Bandier said.

[Richardson Reply Decl., Exhibit A (emphasis added)]

The "First to File" rule is also inapplicable in this case because the issues raised in this case are already involved in litigation pending in California over the sale of same karaoke machine and some of the same works as in issue in this case.  The EMI Parties have offices in California and their choosing to split their claims and to file suit in New York raises serious questions about their motives (really, its managers at Sony/ATV) to attack KTS on two different fronts using a different set of controlled entities.  This is clear bad faith and forum shopping at its worst and should not be condoned under the guise of the "first to file" rule.

Sony/ATV and EMI cannot elevate "form over substance" by pointing out the legal fictions regarding the different ownership structures of each of these music publishing operations while, in reality, they are operated as one.

Defendants submit the facts of this case constitute "special circumstances" that justify not following the "first to file" doctrine.  *Centocor, Inc. v. Medimmune, Inc.,* 2002 WL 31465299 *3 (N.D.Cal.).

**D.   The Claims in KTS's Complaint Are Not Baseless or Without Merit and Have Already Withstood a Motion to Dismiss under Rule 12(b)(6) in the Sony/ATV Action**

**1.   KTS May Raise Copyright Misuse As An Affirmative Claim**

Plaintiffs argue that there can be no copyright misuse for simply enforcing its rights under

the Copyright Act.  However, the law supports an affirmative claim for copyright misuse which is a species of unfair competition and antitrust violations.  The KTS Complaint in the California Action describes how, by bringing a series of infringement actions against down stream distributors, rather than going after the manufacturers, Plaintiffs are seeking to improperly collect multiple damages for the same infringing conduct.  Thus, KTS has made out a prima facie case of copyright misuse - Plaintiffs using their copyrights to obtain multiple recoveries to which they are not entitled.[6]

Copyright misuse is not limited to an affirmative defense, as claimed by EMI, but may be raised as an affirmative claim as well.

> It is true that the Ninth Circuit has described the doctrine of copyright misuse as a defense. *Altera Corp. v. Clear Logic, Inc.,* 424 F.3d 1079, 1090 (9th Cir.2005). The doctrine has, however, been permitted in actions for declaratory relief in this circuit as well. *Practice Management,* 121 F.3d at 518 (describing the doctrine as a defense, but the issue actually arose in an action for declaratory judgment); *Open Source Yoga Unity v. Choudhury,* 2005 WL 756558, *8 (N.D.Cal.2005) (Hamilton, J.) (declaratory relief action).

*Apple, Inc. v. Psystar Corp.*, No. C 08–03251, 2009 WL 303046 (N.D. Cal. Feb. 6, 2009).

> There is no consensus on whether copyright misuse can be brought as an independent claim (as opposed to as an affirmative defense) and district courts come down on both sides of the issue. Compare *Apple Inc. v. PsyStar Corp.,* No. C 08–03251, 2009 WL 303046 (N.D. Cal. Feb. 6, 2009) (allowing misuse counterclaim); *Elec.*

---

[6] Plaintiffs argue that Defendants are raising a "hue and cry at being disgorged of [illicit] profits."  Opp. at p.28.  That is not the case.  Plaintiffs are not seeking disgorgement of Defendants profits.  They are seeking thousands of times those profits through an award of statutory damages.  And this from an innocent infringer who believed the merchandise purchased for resale was legitimate.  Plaintiffs are ignoring the real culprits - the manufacturers of the karaoke discs.  Most likely because they have since licensed those manufacturers to use their copyrights to make further profits for themselves and do not want to "burn" their own customers.

> *Data Sys. Corp. v. Computer Assoc. Int'l, Inc.*, 802 F.Supp. 1463, 1465–66 (N.D. Tex. 1992) (denying defendant's motion to dismiss a copyright misuse claim); *Midwest Tape v. Recorded Books,* No. 3:09 CV 2176, 2010 WL 1258101 at *1 (N.D. Ohio Mar. 26, 2010) (allowing an independent claim of copyright misuse "because the Complaint seeks declaratory judgment"); *Adobe Systems Incorp. v. Norwood,* No. C 10–03564, 2011 WL 845923 (N.D. Cal. Mar. 8, 2011); *Adobe Systems Incorp. v. Kornrumpf,* No. C 10–02769, 780 F.Supp.2d 988, 2011 WL 181375 (N.D. Cal. Jan. 19, 2011) with *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 269 F.Supp.2d 1213, 1225–27 (C.D. Cal. 2003); *Ticketmaster v. RMG Tech., Inc*., 536 F.Supp.2d 1191, 1198–99 (C.D. Cal. 2008). [¶] In this Court's view, an affirmative claim of copyright misuse is appropriate in this case, and Ozimals's motion to dismiss that claim is DENIED.

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1033-34 (N.D. Cal. 2011).

### 2.    Plaintiffs are Entitled to a Single Award of Statutory Damages for Each Copyright Infringed and May Not Seek a Separate Award of Statutory Damages from Every Purchaser in the Chain of Title

Defendants acknowledge that a tort victim is entitled to recover his entire damages from any joint tortfeasor.  What a tort victim cannot do is deliberately and in bad faith prevent that tortfeasor from recovering indemnity from the other joint tortfeasors.  "(I)f the policy of encouraging settlements is permitted to overwhelm equitable financial sharing, the possibilities of unfair tactics are multiplied."  *Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210, 212-13 (9th Cir. 1981).

> Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971). ***Under elementary principles of tort law a plaintiff is entitled to only one recovery for a wrong. Payments made in partial satisfaction of a claim are credited***

Page 13

> *against the remaining liability.* See, e. g., *Schumacher v.*
> *Rosenthal,* 226 F.2d 946 (7th Cir. 1955); Restatement of Torts §
> 885(3) (1939); Prosser, Handbook of the Law of Torts 272-73 (3d
> ed. 1964). *The reservation of rights against others has no effect*
> *on the right to credit payments against the remaining liability.*

*Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.,* 453 F.2d 552, 554 (2d Cir. 1972)

(emphasis added).  Though this case was decided before the 1976 Copyright Act, it has been

applied subsequent to the act by district courts (*Warner Bros., Inc. v. Dae Rim Trading, Inc.,* 677

F. Supp. 740, 769 (S.D. N.Y. 1988) ) and by the 11th Circuit Court of Appeals.

In *BUC Int'l Corp. v. Int'l Yacht Council Ltd.,* 517 F.3d 1271, 1276-78 (11th Cir. 2008),

the 11th Circuit Court of Appeals reversed a district court ruling that rejected a defendant's

request to set off sums paid to a plaintiff in settlement against the defendant's joint liability for

copyright infringement. The district court determined that no right to contribution existed under

the Copyright Act or as a matter of federal common law.  The Court of Appeals stated:

> MLS and IYC are not seeking contribution by invoking the
> one-satisfaction rule. A right of "contribution" allows a defendant
> "to demand that another who is jointly responsible for a third
> party's injury supply part of what is required to compensate the
> third party." Black's Law Dictionary 352-53 (8th ed.2004). It
> "reflects the view that when two or more persons share
> responsibility for a wrong, it is inequitable to require one to pay the
> entire cost of reparation." *Nw. Airlines,* 451 U.S. at 88, 101 S.Ct.
> 1571. *The one-satisfaction rule, by contrast, operates to prevent*
> *double recovery, or the overcompensation of a plaintiff for a*
> *single injury. Rose,* 501 F.2d at 809. Although similar, the theories
> do not always overlap. . . . *The one-satisfaction rule operates*
> *against plaintiffs and requires nothing of joint tortfeasors,*
> *whereas the right to contribution requires actual, and not just*
> *potential, joint tortfeasors to share liability. Id. . . . the*
> *one-satisfaction rule . . . is not a right created to protect*
> *defendants, but to limit plaintiffs.*
>
> Having found that *Northwest Airlines* does not limit our
> ability to apply the one-satisfaction rule to federal claims, we join

Page 14

the Second Circuit in holding that the rule does indeed apply to infringement actions under the Copyright Act. *See Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.,* 453 F.2d 552, 553-54 (2d Cir.1972). In *Screen Gems,* the Second Circuit reviewed an appeal similar to the one before us now. The plaintiffs alleged copyright violations against a number of defendants, three of which settled prior to trial. *Id.* at 553. After a bench trial, the remaining defendants were found liable for a total amount in excess of the total settlement amounts and sought what MLS and IYC seek here, a reduction in their liability by the amount of the settlements. *Id.* Noting that "[c]opyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable," and that "[u]nder elementary principles of tort law a plaintiff is entitled to only one recovery for a wrong," the Second Circuit held "that the Copyright Act allows only a single recovery for a single sale; where multiple defendants are all involved with sales, as are the [non-settling] and the settling defendants here, their liability is joint and several and recovering from one reduces the liability of the others." *Id.* at 554.

       We agree. To hold otherwise would allow a plaintiff to recover multiple times for a single injury, frustrating this elementary principle of tort law in a manner that we cannot imagine envisioned by Congress. Thus, MLS and IYC are entitled to a reduction in the judgment against them by the amounts received by BUC in settlement of claims for the same injury.

*BUC Int'l*, 517 F.3d at 1276-78 (emphasis added).

       It is beyond peradventure that the damages sought in Civ. No. 05-1621(JP) against the television station and related defendants arise from the same events charged in Civ. No. 00-1338(RLA). That is, plaintiff seeks compensation from the illegal broadcasting of the infringing programs which is also the subject matter of the proceedings currently before us. . . . [W]e find that defendants in this case are entitled to a reduction in the $772,079.29 jury award by the $700,000.00 settlement sums received by plaintiff in Civ. No. 05-1621(JP) for claims arising from the same injury, i.e., actual damages resulting from the copyright infringement.

*TMTV, Corp. v. Mass Productions, Inc.,* 2009 WL 890456 *1 (D.P.R. Mar. 27, 2009) aff'd, 645

F.3d 464, 99 U.S.P.Q.2d 1032, 2011 WL 2306514 (1st Cir. 2011).

Page 15

We are not talking about unrelated tortfeasors here, we are talking about distributors and their suppliers in a chain of title.  "Here, where the only Defendant is jointly and severally liable with all other alleged downstream infringers, Plaintiff is entitled to only a single statutory damages award." *McClatchey v. Associated Press*, 83 U.S.P.Q.2d 1095, 35 Media L. Rep. 7885, 2007 WL 1630261 (W.D. Pa. June 4, 2007) (emphasis added).  See also *Bouchat v. Champion Products, Inc.,* 327 F.Supp.2d 537 (D.Md.2003).  In *Bouchat,* one primary infringer, the NFLP, used Plaintiff's drawing to create an infringing logo. The NFLP then licensed the team logo to hundreds, if not thousands, of business entities that used the logo in the course of their businesses.  The *Bouchat* court explained that each of the downstream defendants acted derivatively from a common primary infringer and was jointly and severally liable with the NFLP. *Id.* at n. 22. Accordingly, the Court concluded that Plaintiff would be limited to a single statutory damages award.

In *United States Media Corp. v. Edde Entm't Corp.,* No. 94 Civ. 4849, 1998 WL 401532, at *20 (July 17, 1998 S.D.N.Y.), the owner of the rights to certain movies sued a distributor and five defendant retailers in the chain of distribution. The court found that each of the retailers had directly infringed the copyright by selling or renting copies of the movies, and that the distributor was contributorily liable for each of those infringements. *Id.* at *16–17. Nevertheless, the court granted a single statutory damage award against the distributor, holding that "the award is to be made jointly and severally against all defendants who contributed to the infringement." *Id.* at *20.

Plaintiffs' attempt to divide and collect and collect again to attain multiple damages awards through the entire chain of title is untenable.  As the court held in *Arista Records LLC v.*

Page 16

*Lime Group LLC*, 784 F. Supp. 2d 313, 321 (S.D.N.Y. 2011), "Plaintiffs are entitled to a single statutory damage award from Defendants per work infringed, regardless of how many individual users directly infringed that particular work."  See also *Craigslist, Inc. v. Doe 1*, C09-4739 SI BZ, 2011 WL 1897423 (N.D. Cal. Apr. 25, 2011) report and recommendation adopted sub nom. *Craigslist, Inc. v. Meyer,* C 09-4739 SI, 2011 WL 1884555 (N.D. Cal. May 18, 2011) (statutory damages award range of about $575 million to $7.2 billion is problematic because it would offend the "canon that [courts] should avoid endorsing statutory interpretations that would lead to absurd results.").

Application of the "one satisfaction rule" in this case is analogous to the application of the "first sale doctrine" where the purchaser of a licensed copyrighted work may sell that work to another and is not liable for infringement.  *SoftMan Products Co., LLC v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075, 1082-83 (C.D. Cal. 2001) (first sale doctrine operates as a limit on the exclusive rights of the copyright owner).

Similarly, in situations such as this where an innocent infringer purchases what he believes to be a legitimate licensed work which he then resells, the copyright owner should be entitled to only one statutory damage award per work, regardless of how many infringements up and down the chain of title/distribution.  Had the item been licensed the profit would be limited to the first sale by the copyright owner.  Similarly, where there is no license there should be only one statutory damage recovery no matter how many hands that item passes through.  To hold otherwise would, as in this case, simply lead to absurd results where a copyright owner is claiming millions of dollars in statutory damages.

### 3. Plaintiffs' Unfair Business Practices/Unfair Competition Claim is Not Frivolous and is Not Preempted by the Copyright Act Because Plaintiffs Are Not Asserting A Copyright Ownership Interest

Preemption under the Copyright Act is only available against a claim asserting a right based on copyright ownership interest. Defendants are not asserting any copyright ownership interest in the California Action.

> Plaintiff contends that defendant's unfair competition counterclaim is preempted in part by the Copyright Act. The Copyright Act protects creative works from sale or plagiarization. None of defendant's claims are predicated on the notion that it owns the copyright to the photographic images displayed on plaintiff's website. Therefore, plaintiff's argument is without merit.

*Holt v. Schweiger Const. Co.*, 07-0857-CV-W-REL, 2009 WL 1259966 (W.D. Mo. May 5, 2009).

The California Courts of Appeal have stated that an " 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal.App.3d 509, 530, 206 Cal.Rptr. 164 (1984); see *Bernardo v. Planned Parenthood Federation of America*, 115 Cal.App.4th 322, 353, 9 Cal.Rptr.3d 197 (2004) (noting that some recent California Courts of Appeal have found that any finding of unfairness to competitors under [Business and Professions Code] section 17200 must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition").

### 4. The Very Same Arguments Raised by Plaintiffs Here Was Previously Raised by Sony/ATV and Were Soundly Rejected

Page 18

Defendants asserted a virtually identical Complaint against Sony/ATV as their Complaint against Plaintiffs in the California Action.  Sony/ATV moved to dismiss KTS's Complaint based on the same arguments raised here by Plaintiffs.  The Court soundly rejected Sony/ATV's arguments and denied the motion to dismiss.[7]

### E.   Alternatively, This Case Should be Transferred to The Central District of California Pursuant to 28 U.S.C. § 1404(a)

The EMI Parties' claim that it would be inconvenient to litigate these claims in California is the height of hypocrisy.  The EMI Parties have readily sued other parties for similar alleged violations in California.[8]  Interestingly, in that case the Defendants were Miami-based.  This pattern of suing defendants in distant inconvenient forums represents litigation abuse to vex, harass and oppress them to force early settlements.  These are violations of 28 U.S. §1927 and should not be condoned.

Plaintiffs addressed only two factors with respect to Defendants' motion to transfer: 1) Plaintiffs' choice of forum; and 2) convenience of witnesses.  Neither argument has substance and they are neither persuasive nor controlling.  *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 561 (S.D.N.Y.2000) ("There is no rigid formula for balancing these [convenience] factors and no single one of them is determinative.").

### 1.   Plaintiffs' "Principal" Offices are Not their Only Offices

Plaintiffs assert that rather than having only a slight connection to New York, they have a

---

[7]See Richardson Reply Decl., Exhibit C (Order denying Sony/ATV's Motion to Dismiss).

[8]See Richardson Reply Decl., Exhibit B.

Page 19

"substantial connection to New York" because their "**principal** executive offices" and their

"**principal** offices for the administration of the copyright works" are in New York.  Opp. at p.22.

This argument does not weigh against transfer to California.  While Plaintiffs' "principal" office

is in New York, Plaintiffs also have offices in the Central District of California where they likely

maintain duplicate sets of documents or have immediate access to documents from the

"principal" office in New York.  "A plaintiff may not, by choice of an inconvenient forum, vex,

harass, or oppress the defendant by inflicting upon him expense or trouble not necessary to his

own rights to pursue his remedy."  *United States v. Gen. Motors Corp.*, 183 F. Supp. 858, 860

(S.D.N.Y. 1960); see generally 1 A.L.R. Fed. 15 § 5(a).


> **2.      There is No Indication that Plaintiffs Do Not Have Available
>           Witnesses in Its California Offices**

The only other transfer factor Plaintiffs address is that five (5) of Plaintiffs' corporate

employees would testify at trial.  Opp. at p.22.  However, there's no indication that similar

witnesses are not likewise available in its California Offices.  In fact, as discussed more fully

below, the only evidence of specific witnesses and documents being based in New York are

limited solely to Plaintiffs' alleged "investigation activities."  There simply is no claim that

Plaintiffs' ownership and administration records are only available in New York.

In any event, it is doubtful that five separate witnesses would be required to testify as to

ownership of the copyrights, licensing and injury to Plaintiffs.  Two (or three at most) would

likely suffice.  Additional witnesses would merely be cumulative. In any event, "[t]he number of

witnesses identified does not control."  1 Civil Practice in the Southern District of New York §

10:21 (2d ed.).  Plaintiffs cannot stack the deck with cumulative witnesses to avoid transfer.  *Cf.*

Page 20

*Herbert Ltd. P'ship v. Elec. Arts Inc.,* 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) ("A party

seeking to transfer venue 'may not artificially inflate the number of witnesses to be

inconvenienced absent transfer by listing witnesses whose testimony is not material.' ") (quoting

*NBA Properties, Inc. v. Salvino, Inc.,* No. 99 Civ. 11799, 2000 WL 323257, at *7 (S.D.N.Y.

March 27, 2000).)

Moreover, since all of Plaintiffs' witnesses are employees and Plaintiffs are multi-million

dollar international companies, it is unlikely that Plaintiffs would suffer any inconvenience

whatsoever in traveling to California (where they maintain company offices) to attend trial.  See

Wright, Miller, et al., 15 Fed. Prac. & Proc. Juris. § 3851 (3d ed.) ("[T]the convenience of

witnesses who are employees of a party is given less weight by the court because that party can

obtain their presence at trial.").  In fact, there's no indication that the similar such witnesses are

not available in the Plaintiffs' Los Angeles offices.

> ### 3.    Plaintiffs' Attempts to Manufacture a "Greater" Connection to New York By Purposefully Conducting its Alleged Investigation Into the California Based Defendants' Activities From its New York Offices Rather than Their "Local" Offices Should Be Rejected

Defendants submit that Plaintiffs' alleged "substantial connection" to New York is not

significantly greater than their connection to California when considering a transfer for

convenience.   In fact, the alleged connection alleged here is actually revealed as smoke and

mirrors upon closer examination.  For example, the Declaration of Mr. Abitbol does not deny

that ***Plaintiffs' records*** are available in Plaintiffs' offices in Los Angeles.  In fact, Mr. Abitbol's

statement as to the availability of records does not even refer to Plaintiffs records regarding its

ownership and/or administration of the copyrights in issue.  Rather, Mr. Abitbol's statement is

actually limited solely to **_the records of its investigation_** into the activities of the Los Angeles

based Defendants:  "The **_vast majority_** [not "all"] of the documents **_pertaining to the EMI_**

**_Plaintiffs investigation and compilation of the copyrighted compositions alleged to have been_**

**_infringed by KTS_** in the New York action (with the exception of those generated by or provided

to counsel) are located in the offices of EMI Music Publishing in New York, and all of **_the_**

**_witnesses who participated in that investigation_** (with the exception of outside counsel's staff)

reside in the New York metropolitan area."   Abitbol Decl., ¶8.  Even the investigator hired by

Plaintiffs was located in New York rather than where Defendants reside.  See Declaration of

Francis X. Shea.

It was Plaintiffs choice to conduct the investigation of Los Angeles based Defendants

from its furthermost office in New York.  Like taking steps to create sales to make a claim for

jurisdiction, Plaintiffs should not be allowed to purposefully conduct its investigation in its

furthermost office to try to create a connection with that location for purposes of venue.

"[P]laintiffs are not permitted to 'manufacture' personal jurisdiction over defendants by

orchestrating an in-state web-based purchase of their goods." _Krepps v. Reiner,_ 588 F. Supp. 2d

471, 479 (S.D. N.Y. 2008) aff'd, 377 F. App'x 65, 2010 (2d Cir. 2010).  See also _NuboNau, Inc._

_v. NB Labs, Ltd.,_ 2012 WL 843503, *3 (S.D. Cal. Mar.9, 2012) (Burns, J.) (finding lack of

personal jurisdiction; noting "[t]his kind of orchestrated purchase [of defendant's product by

plaintiff] cannot give rise to personal jurisdiction."); _Adobe Sys. Inc. v. Trinity Software_

_Distribution, Inc_., C 12-1614 SI, 2012 WL 3763643 (N.D. Cal. Aug. 29, 2012) (finding no

personal jurisdiction where "the only evidence in support is the sale of a single copy of Adobe's

software to one of Adobe's investigators in Southern California."); _ISI Brands, Inc. v. KCC Int'l,_

*Inc.*, 458 F.Supp.2d 81, 89 (E.D. N.Y.2006) (noting, "[i]t is beyond dispute that jurisdiction cannot be manufactured by the Plaintiff."); *Mattel, Inc. v. Anderson,* No. 04-CV-5275, 2005 WL 1690528, at *2 (S.D. N.Y. July 18, 2005) (" 'Defendant[ ] cannot be said to have 'purposefully' availed [herself] of the protections of this forum when it was an act of someone associated with plaintiff, rather than [her] web site advertising, that brought [her] products into this forum.' ") (quoting *Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or.1999)); *Stewart v. Vista Point Verlag,* No. 99 Civ. 4425(LAP), 2000 WL 1459839, at *4 (S.D. N.Y. Sept.29, 2000) (holding that plaintiff's order of allegedly infringing product did not confer jurisdiction because this contact was initiated by plaintiff, not defendant); *Elbex Video Kabushiki Kaisha v. Taiwan Regular Elec. Co.,* 93 Civ. 6160(KMW), 1995 WL 224774, at *2-3 (S.D. N.Y. Apr. 14, 1995) (holding that exercise of jurisdiction based on single sale arranged by plaintiff "would offend traditional notions of 'fair play and substantial justice.' ").

The underlying conclusion of these cases is that it was plaintiffs' improperly manipulative acts which were solely being relied upon to create jurisdiction, and not anything that defendants did to avail itself of the forum's jurisdiction.  That is precisely the case here, and Plaintiffs should likewise not be allowed to manufacture a "connection" for venue purposes by purposefully choosing to conduct the investigation of Los Angeles based defendants from somewhere other than its Los Angeles operations.

Given the major offices and substantial operations of Plaintiffs in Los Angeles, as well as the pendency of other claims already being litigated against Defendants in Los Angeles and no doubt the easy access to resources that can be (and surely have been) used to investigate the activities of KTS by Plaintiffs "sister" companies (recall that Sony/ATV and EMI are both

operated out of the same offices by the same people) can only be seen as a purposeful attempt to create jurisdiction and venue in New York and to attack KTS on two different fronts.  This is especially offensive considering that of the 633 works alleged to be infringed in this action, almost two thirds (or 406) of the allegedly infringing works are attributable to a "Super Capacity" karaoke machine the advertising and sale of which is already at issue in the Sony/ATV California Action.[9]  As discussed above, this tactic of suing in the most distant possible fora appears to be a standard operating procedure for the Sony/ATV managed entities like the EMI Parties.

### 4. Plaintiffs Conceded the Remaining Factors Favor Transfer by Failing to Address the Other Factors

Plaintiffs failed to address all of the other factors which, as shown in Defendants' Memorandum in support of their motion, overwhelmingly support transfer of this case to the Central District of California.  "A plaintiff effectively concedes a defendant's arguments by his failure to respond to them."  *Felske v. Hirschmann*, 10 CIV. 8899 RMB, 2012 WL 716632 at *3 (S.D.N.Y. Mar. 1, 2012) (citing *Rosenblatt v. City of N.Y.,* No. 05 Civ, 5521, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007); *Abrahams v. Young & Rubicam Inc.,* 79 F.3d 234, 237 n. 2 (2d Cir.1996).)  See also *Broad v. DKP Corp*., No. 97 Civ. 2029(LAP), 1998 WL 516113, at *3 (S.D.N.Y. Aug. 19, 1998) (explaining that plaintiff's "silence" or failure to respond to defendant's argument is a "tacit admission" thereof), aff'd 182 F.3d 898 (2d Cir.1999); *Bonilla v. Smithfield Assocs. LLC,* No. 09 Civ. 1549(DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec.4,

---

[9]Compare  Exhibit 1 to the Complaint in this action with Exhibit 8 to the Complaint filed by Sony/ATV against KTS (Exhibits 1 and 2 to the Declaration of Timmy Sun Ton ("Ton Decl.").

2009) (plaintiff's failure to respond to two out of three of defendant's arguments for dismissal of claim constitutes abandonment of the claim and calls for dismissal as matter of law); *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed.").

Plaintiffs have effectively conceded the merits of Defendants' motion to transfer the claims against them to the Central District of California by failing to fully or substantially respond to the bulk of the transfer factors argued by Defendants.  Therefore, the Court should order Plaintiffs' claims against Defendants be transferred to the Central District of California.

## III.   CONCLUSION

For the reasons set forth above, the KTS Defendants ask the Court to grant their motion and either dismiss them from this action or, alternatively, transfer the action against them to the Central District of California, or stay this action pending resolution of the Central District Action.

Dated: April 25, 2013                              THE SONI LAW FIRM


                                                   BY:  _/s/ Surjit P. Soni_____
                                                   Surjit P. Soni
                                                   (*Pro Hac Vice*)
                                                   Attorneys for Defendants,
                                                   KTS KARAOKE, INC., and TIMMY SUN TON


                                                   Stephen Weingrad
                                                   Weingrad & Weingrad, LLP
                                                   Empire State Building
                                                   350 Fifth Ave., Suite 7720
                                                   New York, NY 10118
                                                   Local Counsel for Defendants,
                                                   KTS KARAOKE, INC., and TIMMY SUN TON

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18, and not a party to the within action; my business address is 35 N. Lake Avenue, Suite 720, Pasadena, California 91101.

On **April 26, 2013**, I served the foregoing document described as **[CORRECTED RE-FILING REPLY DUE TO EVENT TYPE ERROR AND TABLES] DEFENDANTS KTS KARAOKE, INC. AND TIMMY SUN TON'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER OR STAY THE COMPLAINT** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope addressed as follows:

Hon. Louis L. Stanton
United States Courthouse
Courtroom 21C
500 Pearl Street
New York, NY 10007-1312
*(Courtesy copies)*

Paul Harrison Stacey
Law Offices of Paul Harrison Stacey,
PC
7225 N. Spring Gulch Road
Jackson, WY 83001

Weingrad & Weingrad, LLP
Empire State Building
350 Fifth Ave., Suite 7720
New York, NY 10118

Pryor Cashman, LLP
Donald S. Zakarin
Frank Phillip Scibilia
William Laurence Charron
7 Times Square
New York, NY 10036-6569

[] (BY MAIL) I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. postal service on that same day, with postage thereon fully prepaid at Pasadena, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[] (PERSONAL SERVICE) I caused the above referenced document to be personally served by hand on the addressees listed above

[X] (ELECTRONIC MAIL) I caused the attached document to be transmitted to: the above addressees via CM ECF filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **April 26, 2013,** at Pasadena, California.

     /s/ Gayane Mkrttchian
     GAYANE MKRTTCHIAN